IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, NATIVE ECOSYSTEMS COUNCIL, <br><br> Plaintiffs, <br><br> vs. <br><br> LEANNE MARTEN, Regional Forester of Region One of the U.S. Forest Service, and UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture, <br><br> Defendants. | CV 17–21–M–DLC <br><br> ORDER |

Before the Court is the motion for preliminary injunction of Plaintiffs Alliance for the Wild Rockies and Native Ecosystems Council (collectively "Plaintiffs"). Defendants Leanne Marten, Regional Forester for Region One of the United States Forest Service and the United States Forest Service (collectively "Defendants") oppose the motion. As discussed below, the Court will grant the motion and preliminarily enjoin the Stonewall Vegetation Project until a final ruling is issued on the merits.

1

## BACKGROUND

On February 17, 2017, Plaintiffs filed suit seeking declaratory and injunctive relief contending that Defendants' approval of the Stonewall Vegetation Project (the "Project") violates federal law, specifically the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq*. The Project is located on the Lincoln Ranger District in the Helena National Forest and is approximately four miles from the town of Lincoln, Montana. The Project area totals approximately 24,010 acres and includes management activities on 4,868 acres. Planned management activities are set to begin June 1, 2017, and include logging or thinning on 2,668 acres and prescribed burning on 2,220 acres.[1] The Project authorizes the construction of 0.9 miles of temporary roads and 31.5 miles of road maintenance or reconstruction. Defendants state that this area largely consists of dead lodgepole pine due to disease and insect infestation. As a result, Defendants contend that implementation of the Project will improve forest health and reduce the risk of high-intensity wildfires in the area. However, this area is also frequented by various wildlife, including the Canada lynx.

In 2000, Canada lynx were listed as a threatened species under the ESA. In

---

[1] Plaintiffs' Amended Complaint asserts that management activities will actually include 2,113 acres of logging and 2,755 acres of prescribed burning. (Doc. 6 at 7.) However, this distinction is immaterial for purposes of the present motion.

2006, the United States Fish and Wildlife Service ("FWS") designated 1,841 square miles as critical habitat for the species. However, the FWS failed to designate any National Forest land as critical habitat. Later, in 2007, the Forest Service adopted the Northern Rocky Mountain Lynx Management Direction, known as the "Lynx Amendment," which set specific guidelines and standards for activities that may have an adverse effect on the species. At the same time the Forest Service initiated consultation with the FWS pursuant to section 7 of the ESA, 16 U.S.C. § 1536(a)(2), and determined that the management direction outlined in the Lynx Amendment did not jeopardize the Canada lynx. However, after completing the consultation process the FWS determined that its decisions relating to the designation of critical habitat were flawed and reevaluated its data. As a result of this reevaluation, the FWS subsequently revised the critical habitat designation for the lynx from 1,841 to 39,000 square miles.

In 2012, an environmental organization filed suit in this Court alleging that the Forest Service violated the ESA by failing to reinitiate section 7 consultation following the redesignation of Canada lynx critical habitat. *Salix v. U.S. Forest Serv.*, 944 F. Supp. 2d 984, 986 (D. Mont. 2013). The Court agreed and ordered reinitiation of consultation. *Salix*, 944 F. Supp. 2d at 1002–1003. Following an appeal by the Forest Service, the Court of Appeals for the Ninth Circuit affirmed

the Court's determination that section 7 consultation must be reinitiated. *Cottonwood Envtl. L. Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1088 (9th Cir. 2015), cert. denied, 137 S. Ct. 293 (2016). Consequently, reconsultation between the FWS and the Forest Service began on November 2, 2016, and is currently ongoing. Plaintiffs contend, among other arguments, that the Forest Service is violating the ESA, specifically section 7(d), by implementing the Project prior to the completion of consultation. Accordingly, Plaintiffs seek to enjoin commencement of the Project until the parties' cross-motions for summary judgment can be adjudicated on the merits.

## ANALYSIS

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). Generally, a party seeking a preliminary injunction must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20 (citations omitted). However, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood

of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## A. Likelihood of Irreparable Injury

The Court will first address whether Plaintiffs have alleged a sufficient likelihood of irreparable harm to warrant a preliminary injunction of the Project.[2] Plaintiffs have adequately alleged that implementation of the Project would likely cause irreparable harm to their members. These members have expressed "recreational, scientific, spiritual, vocational and educational interests" in viewing and utilizing "the area in its undisturbed state." (Doc. 8-1 at 3.) Implementation of the Project, Plaintiffs argue, would cause irreparable harm to these interests.

As previously stated by the Ninth Circuit, establishing a likelihood of irreparable harm "should not be an onerous task for plaintiffs." *Cottonwood*, 789 F.3d at 1091. Indeed, Plaintiffs' expressed desire to visit the area in an undisturbed state is all that is required to sufficiently allege harm under ESA. *Cottrell*, 632 F.3d at 1135 (finding plaintiffs' allegation that a proposed timber project would "harm its members' ability to 'view, experience, and utilize' the

---

[2] The Court will address the issue of harm as a threshold issue because Defendants' briefing suggests that Plaintiffs lack Article III standing as well as fail to allege a likelihood of irreparable harm. Plaintiffs have satisfied the standing requirements in that they have described plans to visit the area in future. (Doc. 8-1 at 2) (describing Plaintiffs' plans to visit the area in the summer of 2017 and 2020).) These "specific and concrete plan[s]" satisfy constitutional standing requirements. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 495 (2009).

5

areas in their undisturbed state" satisfied the irreparable harm requirement under *Winter*). Plaintiffs have sufficiently alleged a likelihood of irreparable injury to warrant a preliminary injunction.

## B. Public Interest and Balance of Hardships

When the government is a party under a preliminary injunction analysis, the public interest and balance of equities factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Defendants contend that these factors weigh in its favor for two principal reasons: (1) the Project, though it will temporarily degrade lynx habitat, will improve snowshoe hare habitat and in the long run will ultimately benefit the lynx; and (2) the Project will address the risk of severe wildfire caused "by a nearly contiguous fuel-bed, with heavy accumulations of dead and downed timber." (Doc. 12 at 32.)

However, in the context of alleged procedural violations of the ESA, the public interest and the balance of hardships weighs heavily in favor of a preliminary injunction due the emphasis placed by Congress on the protection of endangered and threatened species. *Cottonwood*, 789 F.3d at 1091 ("[W]hen evaluating a request for injunctive relief to remedy an ESA procedural violation, the equities and public interest factors always tip in favor of the protected

6

species."); *see also Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978) ("Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities . . . ."). Here, the arguments offered by the Defendants against a preliminary injunction fail to overcome the public interest in preservation of the Canada lynx and the interest in ensuring that the Forest Service does not approve the Project in violation of the ESA.

First, the long term positive gains to the lynx cited by Defendants will only be delayed by enjoining the Project. Thus, if Defendants are successful at the conclusion of this lawsuit and the Project is allowed to proceed, the benefits to the species would only be temporarily postponed. *See All. for the Wild Rockies v. Marten*, 200 F. Supp. 3d 1110, 1112 (D. Mont. 2016) ("The balance of equities tips in favor of Alliance because it faces permanent damage if logging activity were to proceed and the Forest Service faces only delay.").

Second, the risk of fire danger to the community of Lincoln, though a serious matter, does not outweigh this Court's obligation to ensure that the Forest Service is complying with the ESA. The Court acknowledges that Defendants have presented evidence that the Project area is susceptible to severe and intense wildfires due to elevated fuel levels caused by "heavy accumulations of dead and

down timber." (Doc. 12-2 at 5.) However, though there is the possibility of serious fire activity within the boundaries of the Project, there is no indication that this area is at risk of imminent fire activity. *See League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (describing the risk posed by wildfires as "speculative"); *see also All. for the Wild Rockies*, 200 F. Supp. 3d at 1112 (granting preliminary injunction against proposed timber project after finding that risk of wildfire did not constitute imminent threat). Defendants argument to the contrary is undercut by the fact that pine beetle infestations in this area "peaked in 2008" and, presumably, the risk of severe fire danger has existed since then. (Doc. 12-2 at 8.) Accordingly, the argument that operations must begin immediately lest the area become subject to imminent fire activity is unpersuasive. Again, if Defendants are ultimately successful in this case then a preliminary injunction would only temporarily delay these mitigation efforts. Accordingly, the Court finds that the public interest and balance of equities factors weigh in favor of an injunction.

## C. Serious Questions Going to the Merits

The Court will next address whether Plaintiffs have presented serious questions as to whether the Project violates section 7(d) of the ESA because reconsultation on the Lynx Amendment has been reinitiated. This section

mandates that:

> After initiation of consultation required under subsection (a)(2), the Federal agency and the permit or license applicant shall not make any irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate subsection (a)(2) of this section.

16 U.S.C. § 1536(d). Thus, once consultation under section 7(a)(2) of the ESA has been initiated, the agency is prohibited from (1) making any irreversible or irretrievable commitment of resources, that (2) foreclose the formulation or implementation of any reasonable and prudent alternative measures with respect to section 7(a)(2) consultation. *See* 50 C.F.R. § 402.09 ("After initiation or reinitiation of consultation required under section 7(a)(2) of the Act, the Federal agency and any applicant shall make no irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternatives which would avoid violating section 7(a)(2)."). Accordingly, satisfaction of these two elements requires that the Project be enjoined until consultation has been completed.

The Court first finds that Plaintiffs have made a strong showing that the Project is an irreversible or irretrievable commitment of resources by the agency.

As stated by the Ninth Circuit "timber sales constitute per se irreversible and irretrievable commitments of resources under § 7(d)." *Pac. Rivers Council v. Thomas*, 30 F.3d 1050, 1057 (9th Cir. 1994); *see also Lane County Audubon Soc. v. Jamison*, 958 F.2d 290, 295 (9th Cir. 1992) ("The ESA prohibits the 'irreversible or irretrievable commitment of resources' during the consultation period. The [timber] sales are such commitments."). Pursuant to this case law, Plaintiffs have presented a serious question as to the first element under section 7(d).

Under the second element, Defendants argues that implementation of the project would not foreclose the formulation or implementation of any reasonable and prudent alternative measures because the Forest Service has determined that:

> projects for which there is compliance with the Lynx Amendment and there is an independent lynx critical habitat [Primary Constituent Element] analysis in a Biological Opinion that the project is not likely to destroy or adversely modify lynx critical habitat are consistent with the requirements of ESA Section 7(d) because, should the Lynx Amendment consultation arrive at a jeopardy conclusion that would necessitate the development of reasonable and prudent alternatives, [the Forest Service] would still retain the necessary flexibility to work with FWS to develop such an alternative for Lynx Amendment programmatic direction and nothing about proceeding with site-specific projects determined to not adversely modify lynx critical habitat would preclude that.

(Doc. 12 at 18) (quoting the Administrative Record at WL25-21:018772,

WL25-20:018761-62) (internal punctuation marks omitted).) Put another way, the Project specific Biological Opinion found that proceeding with management activities will not adversely modify lynx critical habitat and, even if reconsultation concludes that agency action is jeopardizing the Canada lynx, the Forest Service retains the flexibility to implement any revisions to the Lynx Amendment to the Project.

In contrast, Plaintiffs cite to two decisions in this circuit which discussed whether the implementation of section 7(a)(2) consultation under the ESA warranted enjoining agency action until consultation was complete. First, in *Lane County Audubon Society v. Jamison*, the Ninth Circuit found that all future timber sales at issue in the case should be enjoined until agency consultation was complete with respect to management guidelines for the conservation of the northern spotted owl. 958 F.2d at 295 ("Accordingly, the individual sales cannot go forward until the consultation process is complete on the underlying plans which [the agency] uses to drive their development."). In making its determination, the *Lane County* Court found that, under section 7(d), these sales constitute the "irreversible or irretrievable commitment of resources" and cannot commence until consultation was compete.

Second, Plaintiffs cite to the Ninth Circuit's decision in *Pacific Rivers*

*Council v. Thomas.* There, the Ninth Circuit affirmed the district court's order which found that the Forest Service violated the ESA when it failed to initiate section 7 consultation with the National Marine Fisheries Service with respect to land and resource management plans concerning the Snake River chinook salmon. *Pac. Rivers Council v. Thomas*, 30 F.3d at 1051–1052. Upon affirming the district court's finding that the Forest Service must initiate consultation under the ESA, it remanded to the district court to implement an injunction enjoining all "ongoing and announced timber, range and road projects" that affected the Snake River chinook salmon. *Id.* at 1057.

Upon remand, the Forest Service argued that the timber sales should go forward despite the initiation of consultation because it had conducted section 7(d) "evaluations" on all projects deemed to "not adversely affect" the chinook salmon and "issued determinations that all of the proposed ongoing activities . . . will not result in the irreversible or irretrievable commitment of resources which will foreclose the implementation of reasonable and prudent alternatives being contemplated with the [land and resource management plans] consultations." *Pac. Rivers Council v. Thomas*, Civ. No. 92-1322-MA, 1994 WL 908600, at *1 (D. Or. Oct. 20, 1994). The district court rejected this argument, however, after finding that the Forest Service failed to offer identifiable "reasonable and prudent

12

alternatives" resulting from the consultation process. *Pac. Rivers Council,* 1994 WL 908600, at *4–5. The court reasoned that under the ESA "reasonable and prudent alternatives" are the product of the formal consultation process and, as such, these alternative cannot be contemplated prior to consultation. *Id.* at 4 ("I do have a problem with the reasoning which concludes that no alternatives are precluded when no 'reasonable and prudent alternatives' have been identified. Until consultations reach a stage at which reasonable and prudent alternatives are identified in the [biological opinion] process, any § 7(d) analysis necessarily must be premised upon guesswork."); *see also* 50 C.F.R. § 402.02 (defining "reasonable and prudent alternatives" as "alternative actions identified during formal consultation"). Thus, rather then engage in conjecture, the district court enjoined all timber activities until reasonable and alternative measures were identified through the consultation process. *Id.* at 5.

Here, the Court concludes that this authority raises serious questions as to whether the Project should be enjoined pending completion of consultation on the Lynx Amendment.[3] Similar to the Forest Service in *Pacific Rivers Council v.*

---

[3] The Court recognizes that upon first glance it may appear that this decision runs counter to its holding in Alliance for the *Wild Rockies v. Savage,* 209 F. Supp. 3d 1181 (D. Mont. 2016). There, this Court rejected the argument that the *Cottonwood* decision represented a per se rule prohibiting timber projects pending the completion of section 7(a)(2) reconsultation. *Savage,* 209 F. Supp. 3d at 1196. Instead, upon a review of its prior decisions, the Court reasoned that certain projects affecting lynx should be allowed to go forward pending the initiation of

13

*Thomas*, here, Defendants argue that there is no need to identify any reasonable and prudent alternatives because the FWS has already determined "that the Project will not destroy or adversely modify lynx critical habitat and that the two affected Lynx Analysis Units will remain conducive to supporting lynx." (Doc. 12 at 21.) However, this argument is similar to the one rejected by the district court in *Pacific Rivers Council*. Accordingly, this authority raises serious questions as to whether Plaintiffs will ultimately be successful on the merits.

Finally, the Court is ultimately persuaded that an injunction is appropriate at this juncture due to Plaintiffs' representations that the entire Project area is within designated occupied and core lynx habitat, as well as lynx critical habitat. (Doc. 6 at 13.) Because this Project is located at the heart of lynx habitat, any revisions to the Lynx Amendment resulting from consultation could have profound repercussions upon the species. This fact, combined with the authority cited by Plaintiffs, counsels in favor of preliminarily enjoining the Project.

---

consultation if the applicable agencies could "show an independent basis for their conclusions regarding lynx critical habitat by demonstrating that 'the affected critical habitat will remain functional and that the primary constituent elements for critical habitat will not be altered to an extent that appreciably reduces the conservation value of the critical habitat, and neither the recovery nor the survival of the species will be jeopardized.'" *Id.* at 1194–1195 (*citing Native Ecosystems Council v. Krueger*, CV 13-167-M-DLC, 2014 WL 9954189, at *7 (D. Mont. June 4, 2014)). The Court's decision today, however, does nothing to disturb its prior decisions. Unlike the case at bar, at the time *Savage* was decided, consultation had yet to be reinitiated and the prohibitions under section 7(d) were not yet in effect.

## CONCLUSION

The Court does not intend by issuing a preliminary injunction in this case to halt all timber sales in lynx critical habitat. Because of the fact that the entire Project area is within lynx critical habitat, and the risk of fire is not imminent, the wise course is to delay this project until the Court has the opportunity to issue a final decision on the merits of this case.

Accordingly, IT IS ORDERED that Plaintiffs' Motion for Preliminary Injunction (Doc. 7) is GRANTED. The Stonewall Vegetation Project is ENJOINED until further Order by this Court.

DATED this 30th day of May, 2017

Dana L. Christensen, Chief Judge
United States District Court