**MARK STEGER SMITH**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**2601 Second Avenue North**
**Suite 3200**
**Billings, MT 59101**
**Phone: (406) 247-4667**
**FAX: (406) 657-6058**
**Email: mark.smith3@usdoj.gov**

**MELISSA A. HORNBEIN**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**901 Front Street, Suite 1100**
**Helena, MT 59626**
**Phone: (406) 457-5277**
**FAX: (406) 457-5130**
**Email:    melissa.hornbein@usdoj.gov**

**ATTORNEYS FOR DEFENDANT**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| **ALLIANCE FOR THE WILD ROCKIES, NATIVE ECOSYSTEMS COUNCIL,** | **CV 17-21-M-DLC** |
| **Plaintiffs,** | |
| **vs.** | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR VOLUNTARY REMAND** |
| **LEANNE MARTEN, Regional Forester of Region One of the U.S. Forest Service, UNITED STATES** | |

1

| FOREST SERVICE, an agency of the U.S. Department of Agriculture, Defendants. | |

Plaintiffs argue that the United States' Motion for Voluntary Remand is a request for "an indefinite stay."   This is argument is misleading and ignores Ninth Circuit precedent endorsing remands without vacatur.   Defendants' request is reasonable and entirely appropriate under the facts of this case.   A remand without vacatur furthers the interests of judicial economy.   Vacatur of the agency's decision is not necessary because the agency has agreed to review its own decision in light of changed circumstances beyond its control.   The United States seeks remand because the decision should neither be implemented or litigated until the impacts of the Park Creek fire are fully analyzed in a supplemental environmental impact statement.   Because the Park Creek Fire was an event outside of the agency's control, and because it is plausible that the supplemental environmental impact statement may support the extant decision, the agency's motion should be granted.

Plaintiffs suggest that the United States' request for voluntary remand without vacatur is somehow disingenuous because "it appears that Defendants already know the decision that they will ultimately make for the Project at the close of the supplemental EIS Process."   Pl. Br. at 8.   This is untrue.   The Supplemental Information Report and Determination (SIR) concluded that the fire

S:\civil\2017\V00035\Voluntary remand Reply final.DOCX

2

had changed conditions in the project area sufficiently to warrant reevaluation of certain resources affected by the fire.   (Dkt. 44-1 at 25).   The SEIS will accomplish that reevaluation.   Anticipating what the SEIS will conclude or whether there will be any "meaningful changes" to the Record of Decision is not only pointless at this stage, it is immaterial to the question of whether a voluntary remand without vacatur is appropriate.

Plaintiffs also argue that "[t]he agency's desire to leave a pre-existing decision in place during a supplemental EIS process is fundamentally incongruous with NEPA." Pl. Br. at 10.   Nothing in 40 C.F.R. §1502.9, in the agency's implementing policy, or in the case law requires that a decision be vacated or withdrawn pending supplemental NEPA analysis.   Likewise, there is no requirement that contracts be rescinded.   Plaintiffs cite *Metcalf v. Daly*, 214 F.3d 1135, 1145 (9th Cir. 2000), but that case represents a fundamentally different situation.   There, supplemental review was not at issue—it was the fact that the agency entered into a contract long before it did *any* NEPA analysis (i.e. predetermination), that tainted the decision.   Here, the agency did not predetermine an outcome; it reached a decision and subsequently the Park Creek Fire changed some of the variables supporting that decision.

Remand without vacatur is not only compatible with NEPA, it is particularly appropriate in this case because there is no error on the part of the agency.   The Park Creek Fire caused the Forest Service to begin a review of the fire's effects on

S:\civil\2017\V00035\Voluntary remand Reply final.DOCX

the Stonewall project, ultimately concluding that additional analysis is warranted.
That conclusion is the basis for Defendants' motion. Voluntary remand is
appropriate where the need to reconsider a decision is attributable not to an
agency's mistake but where "intervening events outside an agency's control"
compel reevaluation of a decision.   *Carpenters Indus. Council v. Salazar*, 734 F.
Supp. 2d 126, 132 (D.D.C. 2010), (citing *SKF USA Inc. v. United States,* 254 F.3d
1022, 1028 (Fed.Cir. 2001)).   The same consideration influences the balancing
test a court must conduct on the question of vacatur.   *California Communities
Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012).

Contrary to Plaintiffs' insinuation, vacatur is not an automatic remedy but
instead requires careful balancing of the equities.   Even where an agency decision
has been found erroneous, "[i]t is well established in this Circuit that a Court is not
mechanically obligated to vacate an agency decision that it finds invalid." *Sierra
Forest Legacy v. Sherman*, 951 F. Supp. 2d 1100, 1105 (E.D. Cal. 2013).
"Whether agency action should be vacated depends on how serious the agency's
errors are 'and the disruptive consequences of an interim change that may itself be
changed.'"   *California Communities*, 688 F.3d at 992 (quoting *Allied–Signal, Inc.
v. U.S. Nuclear Regulatory Comm'n,* 988 F.2d 146, 150–51 (D.C. Cir. 1993)).   A
court must balance these two equitable factors to evaluate the appropriateness of
vacatur.   *See id.*; *Shands Jacksonville Med. Ctr. v. Burwell*, 139 F. Supp. 3d 240,
270–71 (D.D.C. 2015) (noting "[t]here is no rule requiring either the proponent or

opponent of vacatur to prevail on both factors" and instead "resolution of the question turns on the Court's assessment of the overall equities and practicality of the alternatives"). Here, this balancing test demonstrates that vacatur of the Forest Service's Record of Decision is not warranted.

### A. The Request for Voluntary Remand Does not Result from Error.

Applying the balancing test here, the first prong is satisfied in favor of Defendants because there is no need for the Court to evaluate the seriousness of the agency's error, as there was no error on the part of the agency. The Forest Service moves for a remand because it recognizes that an "indefinite stay" is inappropriate, as is having this Court review the Stonewall decision before supplemental analysis of the changed circumstances is complete.   It defies common sense and judicial economy to suggest the Court review a decision where, as here, a significant intervening event has occurred that may lead to changes in the challenged action and the operative legal arguments.

The Court must consider whether the agency can reach the same conclusion—authorizing the Stonewall Vegetation Project—after taking into account the effects of the fire on the project.   This outcome is possible (though not, as Plaintiffs suggest, foreordained) since according to the Forest Service's Supplemental Information Report (Doc. 44-1), a majority of the project area

impacted by the fire were units that were already planned for prescribed burning.[1]
Given the realistic possibility that the decision (or key elements of the decision)
may stand following further analysis, remand without vacatur is appropriate.  *See*,
*Black Oak Energy, LLC v. FERC*, 725 F.3d 230, 244 (D.C. Cir. 2013) (refusing to
vacate rule because it was "plausible that [the agency] can redress its failure of
explanation on remand while reaching the same result").   For example, in *Allied–
Signal, Inc. v. U.S. Nuclear Regulatory Comm'n,* 988 F.2d 146, 150–51 (D.C. Cir.
1993), the D.C. Circuit would not vacate a challenged rule when there was "at least
a serious possibility that [the agency would] be able to substantiate its decision on
remand" through additional explanation in a new rule. 988 F.2d at 151.   The
instant case presents an even stronger argument in favor of remand without
vacatur, because the agency has neither made nor confessed error.

Plaintiffs' exhibits do not support their argument in favor of vacatur.
Exhibit 1 is inapposite because the court's concern in *Rock Creek Alliance v. FWS*,
centered around a biological opinion, which the Fish and Wildlife Service sought
to leave in place during the pendency of a remand.   Plaintiffs in that case
expressed concern that individuals might act in reliance on the existing BiOp,

---

[1]  The SEIS will review the environmental effects of the project against a baseline
of the current circumstances.   Where the Park Creek Fire changed conditions such
that the environmental effects of the project are now different than described in the
EIS, those effects will be analyzed in light of changed conditions.   Where the
environmental effects of the Project are the same as disclosed in the EIS, the
agency will continue to rely on its original analysis for those resources.

which could be subject to change based on the agencies' review.   *Rock Creek Alliance v. FWS*, CV-01-152-M-DWM, Order at 2 (D. Mont. Mar. 19, 2002).   The facts here are entirely distinguishable.   No action implementing the Project will take place until the SEIS is complete and any necessary changes are made to the decision.   Plaintiffs will have the opportunity to comment, object, or seek judicial review of the revised analysis and the ROD.

Plaintiffs' Exhibit 2 is the text of a docket entry.   Putting aside the issue that this does not represent any known form of precedent—much less binding precedent—the situation it describes is factually distinguishable from the instant case.   To the extent that the court's reasoning can be extrapolated from a docket entry, the motion for voluntary remand without vacatur was denied because the court determined that it was not in the interests of judicial efficiency.   In the instant case, by contrast, an order granting voluntary remand without vacatur serves judicial economy by allowing the decision to remain in place pending supplemental environmental review.

Plaintiffs' Exhibit 3 is another docket entry of even greater brevity than Exhibit 2.   This docket entry apparently records the court's denial of a motion to stay summary judgment briefing and grant of a motion for a short extension of time.   There is no mention of a request for remand with or without vacatur. Exhibit 3 does not represent any form of precedent in favor of vacatur in the instant case.

Plaintiffs' Exhibit 4 is an order from the District of Minnesota.   In that case, however, the court denied EPA's motion because it was untimely.   Further, EPA requested the remand based on a conclusion that in approving a TMDL under the Clean Water Act, it had not adequately considered "important aspects of CWA section 303(d) and EPA's TMDL regulations."   Exhibit 4 is not controlling precedent because it comes from a district court in a different circuit, it is procedurally dissimilar, and it involves admittedly flawed agency action, which is not the case here.   Plaintiffs' exhibits and cited cases do not serve to support their argument in favor of vacatur.

Likewise, Plaintiffs' argument that "withdrawal of a record of decision during a voluntary remand for new environmental analysis is the lawful and well-established practice of the USFS," does not establish that withdrawal is required. Pl. Br. at 14-15. Plaintiffs have assembled a laundry list of cases in which they assert the USFS did withdraw a decision pending supplemental review.   However, this litany fails to establish any legal precedent, and it ignores the agency's discretion to manage each case based on its individual facts.   Plaintiffs include no analysis of any of these cases, and none—where a reason is given for the agency's withdrawal of its decision—are factually analogous to the instant case.

In five of the eleven cases cited by Plaintiffs as precedent that vacatur is required, no rationale is given for the agency's withdrawal of its decision.   *See Native Ecosystems Council v. Krueger*, CV-12-206-DWM, Doc. 5 (D. Mont. April

26, 2013)(USFS Trapper Project); *Alliance for the Wild Rockies v. Krueger*, CV-
12-158-DLC, Doc. 10 (D. Mont. Dec. 7, 2012)(USFS Little Belt Project); *Native
Ecosystems Council v. Weldon*, CV-10-43-DWM, Doc. 9 (D. Mont. Sept. 9,
2010)(USFS Elliston Face Project); *Native Ecosystems Council v. Tidwell*, CV-09-
68-DWM, Doc. 21 (D. Mont. Oct. 6, 2009)(USFS Whitetail Project); *Native
Ecosystems Council v. Tidwell*, CV-08-151-DWM, Doc. 5 (D. Mont. Feb. 6,
2009)(USFS Newlan Bugs Project).

     The remaining cases cited by Plaintiffs are factually distinguishable.   In one
case, the Forest Service voluntarily suspended a contract on discovering an error in
its Biological Analysis that required reinitiation of consultation under the ESA.
*Alliance for the Wild Rockies v. Marten*, CV-15-99-BMM, Doc. 67 (D. Mont. Jan.
27, 2017)(USFS Greater Red Lodge Project).   In another, a forest fire affected the
project area to such an extent that the purpose and need for the project "is no
longer viable and the specific treatment prescriptions can no longer be
accomplished." *Native Ecosystems Council v. Weldon*, 9th Cir. No. 12-35419, Dkt.
10, Ex. A (D. Mont. Sept. 18, 2012)(USFS Beaver Creek Project).   The remaining
cases involved withdrawal of the agency's decision under circumstances where
possible error or omission of analysis was implied, changed legal circumstances
created a potential for error, or changed conditions rendered the project
impracticable.   *Native Ecosystems Council v. Weldon*, CV-11-27-DWM, Doc. 13
(D. Mont. April 29, 2011)(USFS North Butte Project)(agency did not justify its

request for a stay); *Native Ecosystems Council v. Tidwell*, CV-09-17-DWM, Doc.
27 (D. Mont. Nov. 18, 2009)(USFS Lonesome Wood Project) (plaintiffs filed
notice of supplemental authority regarding possible relisting of Yellowstone
Grizzly); *Native Ecosystems Council v. Tidwell*, CV-08-173-DWM, Doc. 6 (D.
Mont. Feb. 25, 2009)(USFS Barton Springs Project)(insect kill changed conditions
supporting approval of project); *Alliance for the Wild Rockies v. Tidwell*, CV-08-
89-DWM, Doc. 9 (D. Mont. July 7, 2008)(USFS Price Powder Project)(no
indication agency meant to resurrect a withdrawn project in future and no
presumption of future wrongdoing supported Plaintiffs' request for dismissal with
future conditions).   None of these situations apply here, where a circumstance
outside of the agency's control—the Park Creek Fire—necessitates further analysis
before the project decision can be implemented, but does not necessarily preclude
its implementation.

### B.  Vacatur Will Have Disruptive Consequences

The Court must also weigh the disruptive consequences of vacatur.
*California Communities*, 688 F.3d at 992.   The Stonewall project was initiated to
address extreme fire danger, help restore natural habitats, and mitigate the effects
of insect and disease infestations.   (AR 85274, 85279).   The Park Creek fire
demonstrated the risks posed by heavy fuel loads in the project area.
Unnecessarily vacating the Record of Decision will only delay this project, which
is the result of community and interest group collaboration.

In applying this test in environmental cases, the Ninth Circuit has ruled that in addition to weighing the environmental consequences of vacatur, courts should consider economic and other practical concerns. *California Communities*, 688 F.3d at 994.   In the absence of any risk of harm to the interests asserted by Plaintiffs, the scales tip in favor of remand without vacatur.

Plaintiffs assert that "under well-established case law, allowing a pre-existing contract to remain in place during a supplemental NEPA process violates NEPA because it indicates that the agency improperly arrived at its decision before conducting environmental analysis."   Pl. Resp. at 2.   Plaintiffs fail to cite any case law—well established or otherwise—in support of this statement, which is patently incorrect.   As noted above, this is not a case of "predetermination," but rather a case where new events—occurring after the disputed agency action—have altered resources enough to warrant supplemental NEPA analysis to determine whether the analysis or the project require revision.

Some activities authorized by the Stonewall ROD are currently under contract, but no activity under these contracts has occurred.   While modifications to the ROD and existing contracts may occur, it is not necessary or economical to terminate an existing contract because of delay or the potential need for modification.   In fact, doing so could impose substantial costs and further delay on the Forest Service as a result of circumstances outside its control.

**C.   Remand Without Vacatur Will Not Harm Plaintiffs.**

The Court must consider the likelihood and possible magnitude of environmental harm that could occur in lieu of vacatur. *See, e.g.*, *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Pena*, No. 3:12-CV-02271-HZ, 2015 WL 1567444, at \*5–6 (D. Or. Apr. 6, 2015).   Here, there is no possibility of harm to Plaintiffs' alleged interests since there will be no project implementation until the SEIS is complete.[2]   If the United States' motion is granted, Plaintiffs will be afforded the chance to comment and object to the SEIS

---

[2] The Forest Service committed in the Supplemental Information Review that "no implementation of activities authorized by the Stonewall Record of Decision will move forward until this analysis has been completed.   (Dkt. 44-1 at 25).   It is important to note also that the project is currently enjoined until further order of the Court.   Dkt. 19.   With regard to that injunction and the issue of lynx critical habitat within the project area, the U.S. Fish and Wildlife Service completed its Biological Opinion on the Northern Rockies Lynx Management Direction (aka Lynx Amendment) on October 18, 2017, and concluded that the Lynx Amendment is not likely to result in the destruction or adverse modification of designated critical habitat for the Canada lynx.   *See* Exhibit 1. This Opinion concluded the agencies' Endangered Species Act ("ESA") Section 7 consultation process for the Lynx Amendment.   Section 7(d) remains "in force during the consultation process and continues until the requirements of section 7(a)(2) are satisfied."   50 C.F.R. § 402.09.   Thus, once consultation is complete, the Section 7(d) prohibition no longer applies.   *See Conner v. Burford*, 848 F.2d 1441, 1452 (9th Cir. 1988) ("[S]ection 7(d) forbids 'irreversible or irretrievable commitment of resources' during the consultation process." (emphasis added)); *Enos v. Marsh*, 616 F. Supp. 32, 62 (D. Haw. 1984) (An agency's obligation to comply with Section 7(d) "exists only while the [agency] is consulting with the Service. This duty is terminated when the consultation is terminated.").   Hence, Plaintiffs' ESA Section 7(d) claim is moot.   Likewise, ESA Section 7(d) cannot be grounds to enjoin agency action after the agency has satisfied the requirements of Section 7(a)(2).

and proposed modified ROD.   The supplemental review will be subject to the same public review as the initial NEPA analysis, and will undergo all of the steps set forth in the regulations.

The suspension of activity during the pendency of the evaluation "in effect removes the potential harm" that Plaintiffs raised in their preliminary injunction and summary judgment briefing.   Thus, Plaintiffs confront no harm or prejudice prior to completion of the SEIS.   *Sierra Club v. Van Antwerp*, 560 F. Supp. 2d 21, 25 (D.D.C. 2008).

For these reasons, Defendants respectfully request this court to grant its Motion for Voluntary Remand and without vacatur.

**DATED** this 9th day of February, 2018.

> **KURT G. ALME**
> **United States Attorney**
>
>
> **/s/ MELISSA A. HORNBEIN**
> **Assistant U. S. Attorney**
> **Attorney for Defendants**

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the attached brief is proportionately spaced, has a typeface of 14 points and contains 2,917 words, excluding the caption and certificates of service and compliance.

**DATED** this 9th day of February, 2018.

**/s/ MELISSA A. HORNBEIN**
**Assistant U. S. Attorney**
**Attorney for Defendants**

S:\civil\2017V00035\Voluntary remand Reply final.DOCX

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of February, 2018, a copy of the foregoing document was served on the following person by the following means.

| | |
|---|---|
| __1-4__ | CM/ECF |
| _____ | Hand Delivery |
| _____ | U.S. Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1.  Clerk of Court

2.  Rebecca K. Smith
PUBLIC INTEREST DEFENSE
CENTER, PC
P.O. Box 7584
Missoula, MT 59807
(406) 531-8133 – phone
publicdefense@gmail.com
*Attorney for Plaintiff*

3.  Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, Montana 59807
(406) 721-1435 – phone
tim@bechtoldlaw.net
*Attorney for Plaintiff*

4.  Kristine Akland
AKLAND LAW FORM, PLLC
P.O. Box 7274
Missoula, Montana 59807
(406) 544-9863 – phone
aklandlawfirm@gmail.com
*Attorney for Plaintiff*

**/s/ MELISSA A. HORNBEIN**
**Assistant U.S. Attorney**
**Attorney for Defendants**

S:\civil\2017\V00035\Voluntary remand Reply final.DOCX