IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, NATIVE ECOSYSTEMS COUNCIL, <br><br> Plaintiffs, <br><br> vs. <br><br> LEANNE MARTEN, et al., <br><br> Defendants. | CV 17–21–M–DLC <br><br><br> ORDER |

Before the Court is Defendants' Motion for Voluntary Remand (Doc. 43) wherein Defendants request that the Court remand, without vacating, the Record of Decision ("ROD") for the Stonewall Vegetation Project to allow the Forest Service to perform supplemental environmental analysis as a result of the 2017 Park Creek Fire. At the May 18, 2018 hearing on this Motion, Defendants elaborated that they are seeking dismissal of this case without vacatur for the purpose of completing the supplemental analysis, although this relief was not explicitly requested in their Motion. Plaintiffs do not oppose voluntary remand if the ROD is either "withdrawn by the agency or vacated by the Court." (Doc. 45 at 16.) For the following reasons, Defendants' Motion will be granted in part and denied in part.

-1-

## Procedural Background

The Forest Service issued a Final Environmental Impact Statement ("FEIS") on August 24, 2015, and the Stonewall Vegetation Project ROD on August 25, 2016. On September 28, 2016, the Forest Service awarded a Timber Sale Contract ("Timber Contract") to R-Y Timber, Inc. Plaintiffs commenced this action on February 17, 2017, and on May 30, 2017, the Court granted a preliminary injunction enjoining the Stonewall Vegetation Project. On June 30, 2017, Plaintiffs filed a motion for summary judgment and Defendants were given until August 7, 2017, to respond. On July 17, 2017, Defendants filed a Notice of Fire Incident and on August 8, 2017, this Court stayed the case and required Defendants to file a status report notifying the Court of the status and impacts of the fire by October 2, 2017.

On October 2, 2017, Defendants filed a status report indicating that the fire had not yet been fully contained and that an extended stay was warranted because the Forest Service needed additional time to assess the impact of the fire on the project area after containment. While the Court initially denied the request to extend the stay, upon reconsideration, the Court ultimately extended the stay after finding that "the Government needs to conduct on-the-ground assessment of the project area to determine whether the fires have altered the physical characteristics

of the project area and, in turn, confront the likelihood that the changes altered the analyses 'that are the focal point of this litigation.'" (Doc. 41 at 8 (quoting Doc. 40 at 13).) To this end, Defendants were required to apprise the Court of the "results of its completed fire impact assessment no later than January 19, 2018." (*Id.* at 9.) On January 19, 2018, Defendants filed the subject Motion on the grounds that an "interdisciplinary review of the resources affected by the fire" indicates that "supplemental environmental analysis is warranted." (Doc. 43 at 2.)

## DISCUSSION

In light of the Forest Service's determination that supplemental environmental analysis is warranted as a result of the Park Creek Fire's effects on the project area, Defendants seek remand to the Forest Service for completion of the analysis without vacating the ROD. Defendants have now clarified that they are seeking a remand and dismissal of this case while the disputed ROD remains intact. Defendants have also made clear that the potential loss of the Timber Contract is the chief consideration for their request that the remand be without vacatur. However, Defendants indicated during the May 18, 2018 hearing that it isn't entirely clear whether the Timber Contract would remain in effect if the ROD was vacated. In the event the Timber Contract remained viable, Defendant's argue that vacatur would still result in harm because there would be approximately 60

days' additional delay—during which time any salvageable timber in the project area would have decreased in value from the deteriorating effects of prolonged exposure. Because Plaintiffs have indicated that they do not oppose remand if it is accompanied by either vacatur or withdrawal of the ROD, the central issue in dispute is whether remand should be without vacatur of the ROD. Nonetheless, the Court begins with a brief discussion of the propriety of remand in this case.

"A federal agency may request remand in order to reconsider its initial action." *Cal. Communities Against Toxics v. United States E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012). "Generally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith." *Id.* (citing *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)). When tasked with deciding the propriety of a request for voluntary remand, courts in this Circuit generally look to the Federal Circuit's decision in *SKF USA, Inc. v. United States*, 254 F.3d 1022 (Fed. Cir. 2001), for guidance. *See, e.g., Cal. Communities*, 688 F.3d at 992; *N. Coast Rivers Alliance v. United States Dep't of Interior*, No. 1:16–CV–00307–LJO–MJS, 2016 WL 8673038, at *3 (E.D. Cal. Dec. 16, 2016); *Guam Preservation Trust v. Gregory*, No. 10-00677, 2011 WL 13248292, at *3 (D. Haw. June 30, 2011); *Oregon Nat'l Desert Ass'n v. Freeborn*, No. CV 06–1311–MO,

2007 WL 9658100, at *1 (D. Or. June 19, 2007). In *SKF USA*, the Federal Circuit stated that:

> [W]hen an agency action is reviewed by the courts, in general the agency may take one of five positions, though it is possible that there may be remand situations that do not fall neatly into this taxonomy. First, it may choose to defend the agency's decision on the grounds previously articulated by the agency. Second, it may seek to defend the agency's decision on grounds *not* previously articulated by the agency. Third, the agency may seek a remand to reconsider its decision because of intervening events outside of the agency's control. Fourth, even in the absence of intervening events, the agency may request a remand, without confessing error, to reconsider its previous position. Finally, . . . the agency may request a remand because it believes that its original decision was incorrect on the merits and it wishes to change the result.

254 F.3d at 1027–28 (emphasis in original).

Here, the agency is seeking remand to reconsider its decision because an uncontrollable intervening event, the Park Creek Fire, burned a significant portion of the project area. Consequently, Defendants fall within the third position. Under these circumstances, "[a] remand is generally required if the intervening event may affect the validity of the agency action." *Id.* at 1028. The Court is satisfied that the "interdisciplinary review" performed by Defendants appropriately determined that the Park Creek Fire changed conditions which warrant "reevaluation of project analyses and possible modification of the ROD." (Doc. 44 at 3.) Moreover, the propriety of remand is not contested in this case. (Doc. 45 at 16–17.) Because

"the intervening event may affect the validity" of the ROD and the Court has received no argument or evidence tending to suggest that Defendants' request for voluntary remand has been made frivolously or in bad faith, the Court determines that voluntary remand is appropriate in this case.

The Court now turns to whether remand will be with or without vacatur. While the Ninth Circuit "does not mandate vacatur," courts "in the Ninth Circuit decline vacatur only in rare circumstances." *Klamath-Siskiyou Wildlands Ctr. v. Nt'l Oceanic and Atmospheric Admin. Nt'l Marine Fisheries Serv.*, 109 F. Supp. 3d 1238, 1242 (N.D. Cal. 2015) (citing *Cal. Communities*, 688 F.3d at 992). Indeed, it is only in rare circumstances, "'when equity demands,'" that the agency action is left in place on remand. *Cal. Communities*, 688 F.3d at 992 (quoting *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995); *see also Humane Soc'y v. Locke*, 626 F.3d 1040, 1053 n. 7 (9th Cir. 2010) ("In rare circumstances, when we deem it advisable that the agency action remain in force until the action can be reconsidered or replaced, we will remand without vacating the agency's action."); *Ctr. for Food Safety v. Vilsack*, 734 F. Supp. 2d 948, 951 (N.D. Cal. 2010) ("[T]he Ninth Circuit has only found remand without vacatur warranted by equity concerns in limited circumstances, namely serious irreparable environmental injury.").

To determine whether the Court should vacate the ROD, the Court must evaluate two factors: "(1) the seriousness of an agency's errors and (2) the disruptive consequences that would result from vacatur." *Klamath-Siskiyou*, 109 F. Supp. 3d at 1242 (citing *Cal. Communities*, 688 F.3d at 992). Put another way, "courts may decline to vacate agency decisions when vacatur would cause serious and irremediable harms that significantly outweigh the magnitude of the agency's error." *Id.* (internal quotation marks and citation omitted). Additionally, in *Pollinator Stewardship Council v. United States E.P.A.*, 806 F.3d 520, 532 (9th Cir. 2015), the Ninth Circuit also established that courts could consider the likelihood that the agency will reach the same decision on remand, vacatur being more appropriate if the same result is unlikely.

Looking at some circumstances which have prompted the Ninth Circuit to remand without vacatur provides a measure for the level of severity of consequences which will warrant this rare remedy. Applying these factors in *California Communities Against Toxics v. United States E.P.A.*, 688 F.3d 989, 993–94 (9th Cir. 2012), the Ninth Circuit declined to vacate an agency decision when the "severe" consequences of vacatur included regional power outages necessitating "the use of diesel generators that pollute the air, the very danger the Clean Air Act aims to prevent," the economic disaster of halting and delaying "a

billion-dollar venture employing 350 workers," and the likelihood that the California legislature would be required "to pass a new bill . . . [that] would create needless and duplicative legislative effort." The "severe" calamities destined to follow an order of vacatur outweighed the substantive and "harmless" procedural errors which invalidated the agency action, presenting a situation warranting "judicial restraint" in the exercise of vacatur. *Id.* at 992–994. In an earlier decision, *Idaho Farm Bureau Federation v. Babbitt*, 58 F.3d 1392, 1403–06 (9th Cir. 1995), the Ninth Circuit similarly found that vacatur of an agency action invalidated by procedural error was not warranted because "equitable concerns"— the potential extinction of a species of snail—weighed in favor of remand without vacatur. The Court is satisfied that the consequences of vacatur in the case at hand, which are much less severe in comparison to the cases above, do not warrant "judicial restraint" in the exercise of vacatur.

As to the first factor, Defendants contend that there is no error to be weighed because the remand is sought in order to address the environmental changes resulting from the Park Creek Fire, which is not an error attributable to the agency. Because Defendants are not conceding any error attributed them by Plaintiffs and have only sought remand to perform supplemental environmental analysis of the effects of the fire, the Court agrees. However, regardless of the fact that the error

-8-

is not attributable to the Defendants, the error being addressed—the effects of the fire on the project—is significant and will likely result in changing the ROD in this case. As Defendants' stated: "[i]t defies common sense and judicial economy to suggest the Court review a decision where, as here, a significant intervening event has occurred that may lead to changes in the challenged action and the operative legal arguments." (Doc 46 at 5.) The Court acknowledges that Defendants also contend that there is a "realistic possibility that the decision . . . may stand" after remand but is convinced that the impetus of this Motion—the need to evaluate the implications of a substantial fire on the proposed project—belies this contention. Consequently, the Court finds that there is no error attributable to the agency but that it is unlikely the ROD will stand on remand.

As to the second factor, Defendants argue that because the Park Creek Fire itself "demonstrated the risks posed by heavy fuel loads in the project area" and vacatur "will only delay this project," the second factor weighs against vacatur. (Doc. 46 at 10.) Additionally, Defendants appropriately assert that the Ninth Circuit's consideration of the economic consequences of vacatur in *California Communities* permits this Court to consider the "economic and other practical concerns" of vacatur in this case. (*Id.* at 11.) To this end, Defendants assert that vacatur could result in the termination of the Timber Contract and "it is not

necessary or economical to terminate an existing contract because of delay or the potential need for modification." (*Id.*) Defendants' then vaguely add that doing so "could impose substantial costs and further delay on the Forest Service as a result of circumstances outside its control." (*Id.*) During oral argument on this Motion, Defendants elaborated that they foresee an additional 60 days' delay resulting from vacatur and that this delay will result in the economic consequence of decreased salvageable timber value in the project area.

Defendants' arguments on this point are unavailing. While there has been a fire demonstrating the risks of heavy fuel loads in the project area, Defendants have not explained why any delay as a result of vacatur will increase the magnitude of this risk and, importantly, the fire has already occurred. Moreover, termination of the Timber Contract is speculative—Defendants conceded during oral argument on this Motion that it is not certain that it will be terminated as a result of vacatur. Further, as to the potential for decreased salvageable timber values, the Court does not have any measure by which to classify this economic consequence as "severe." The Court has been provided with neither a calculus to determine the loss in value of salvageable timber as a result of approximately 60 days' weather nor an estimated dollar amount to substantiate Defendants' speculative "substantial costs."

Consequently, the Court is satisfied that this case does not present the exceptional circumstance where "equity demands" that the Court exercise judicial restraint by declining to vacate the ROD upon remand. Balancing the gravity of the agency's errors with the consequences of vacatur, it is apparent that while there is no error attributable to the agency, there are also no "serious and irremediable harms" that demand that the ROD be left in place. Further, the Court finds it unlikely that the ROD will stand after the completion of the analysis on remand. Accordingly,

IT IS ORDERED that Defendants' Motion (Doc. 43) is GRANTED IN PART AND DENIED IN PART. The Forest Service's Record of Decision for the Stonewall Vegetation Project is VACATED and REMANDED to the Forest Service for completion of a supplemental environmental analysis of the effects of the Park Creek Fire on the proposed project.

DATED this 12th day of June, 2018.

Dana L. Christensen, Chief Judge
United States District Court